IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| IN RE: | * | CHAPTER 7 |
| --- | --- | --- |
| LISA LEE SHILOH, | * | |
| Debtor | * | CASE NO. 1:09-bk-07392 MDF |
| | * | |
| ROBERTA A. DeANGELIS, | * | ADV. NO. 1:10-ap-00256 MDF |
| UNITED STATES TRUSTEE | * | |
| Plaintiff | * | |
| | * | |
| v. | * | |
| | * | |
| LISA LEE SHILOH, | * | |
| Defendant | * | |
| | * | |

## OPINION

Before the Court is the adversary complaint filed by United States Trustee ("UST") seeking an order under 11 U.S.C. § 727(d) revoking the discharge granted to Lisa Shiloh ("Debtor") under § 727 (a).[1] For the reasons set forth below, the relief sought by the UST will be denied.

### Facts and Procedural History

Debtor filed a voluntary Chapter 7 petition on September 23, 2009. Debtor received her discharge on January 10, 2010, and the case was subsequently closed. On June 15, 2010, Debtor and her spouse, Kirk Shiloh, were arrested by state authorities and charged with possession of and trafficking in heroin and crack cocaine. After Debtor was charged, but before the jury trial in state court, the UST filed a motion to reopen the bankruptcy case, which was granted on July 15, 2010.

---

[1]This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(J). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052.

When Debtor filed her petition, she stated on Schedule I that she was unemployed and that she had no source of income.[2] On July 19, 2010, the UST filed the instant adversary complaint (the "Complaint") seeking revocation of Debtor's discharge. In the Complaint, the UST alleges that Debtor obtained her discharge through fraud and that she failed to disclose assets and income. The UST further alleges that she did not know of Debtor's unreported assets and income until after the discharge was granted. On January 31, 2011, an Adams County jury found Debtor guilty on six counts of delivery of a controlled substance, one count of criminal conspiracy, four counts of criminal use of a communication facility, and one count of child endangerment.

Trial on the Complaint to revoke Debtor's discharge was held on May 10, 2011, at which time Debtor appeared pro se by video from prison. In her case in chief, the UST abandoned the assertion that Debtor had failed to report assets on her schedules and relied solely on the allegation that Debtor had failed to report pre-petition income received from illicit drug sales. The UST entered into evidence, without objection, the criminal trial transcript, various affidavits of probable cause, and the verdict slip. Several excerpts from the transcript were read into the record. The testimony of witnesses in these excerpts addressed the amount of drugs they purchased from Debtor and the frequency of these purchases. Although some of the drug sales occurred at or about the time Debtor filed for bankruptcy, no evidence was presented as to the

---

[2] Docketed in the Debtor's main bankruptcy case is a certification that Debtor received no reports of income received ("payment advices") during the six months prior to filing for bankruptcy. On Schedule I, Debtor stated that her non-filing spouse, Kirk Shiloh ("Kirk") was employed as a carpenter. The combined average monthly income for Kirk and Debtor was listed as $2,905.46, all of which is attributable to Kirk. In her Statement of Financial Affairs, Debtor reported that she had an interest in a business, K&L Enterprises, LLC, which was engaged in lawn care and landscaping between 2004 and 2008.

2

Case 1:10-ap-00256-MDF    Doc 20    Filed 07/26/11    Entered 07/26/11 11:46:09    Desc
Main Document    Page 2 of 7

total receipts from these sales nor was testimony presented regarding what was done with the cash after it was received by Debtor. No evidence was introduced as to the amount of income alleged to have accrued to Debtor from the sale of drugs in the months leading up to the filing of her petition. Debtor did not admit that she had been selling drugs. Her only response to the UST's allegations was that she was appealing her conviction under the Post Conviction Relief Act (PCRA). *See* 42 Pa. Cons. Stat. Ann. §§ 9541-9546 (West 2007).

## Discussion

The purpose of a bankruptcy discharge is to relieve an honest debtor from his financial burdens and to facilitate his unencumbered fresh start. *Kaler v. Olmstead (In re Olmstead)*, 220 B.R. 986, 993 (Bankr. D. N.D. 1998). Revocation of a debtor's discharge runs counter to this policy. *Id; In re Rodwell,* 280 B.R. 100, 101 (Bankr. D. N.J. 2002). General equity principles or the totality of the circumstances do not provide a basis for denial of a debtor's discharge. To the contrary, "a debtor's discharge may only be denied or revoked for those reasons clearly expressed by statute, with all the statutory exceptions to discharge construed liberally in favor of the debtor and strictly against the party bringing the action." *Yoppolo v. Sayre (In re Sayre)*, 321 B.R. 424, 427 (Bankr. N.D. Ohio 2004); *see also In re Taylor* ___ B.R. ___, 2011 WL 2259740, *1 (Bankr. E.D. Pa. 2011) (noting that revocation of a debtor's discharge is an extraordinary remedy). The moving party has the initial burden of establishing the applicability of one of the grounds set forth in 11 U.S.C. § 727(d), and the standard of proof is preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 289-90 (1991); *see also In re Rodwell*, 280 B.R. at 102 (citing cases).

3

Section 727(d)(1) of the Bankruptcy Code provides as follows:

> (d) On the request of ... the United States Trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if-
> (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge.

11 U.S.C. § 727(d)(1).

"To revoke a discharge under § 727(d), the debtor must have committed a fraud in fact which would have barred the discharge had the fraud been known." *Burns v. Gallimore (In re Gallimore)*, 2004 WL 1743947 at *10 (Bankr. M.D.N.C. June 8, 2004) (quoting *In re Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)). Here, the UST argues that Debtor's discharge should be revoked on the grounds that she made a false oath or account, which supplies a basis for denial of a discharge under §727(a)(4)(A). Section 727(a)(4)(A) provides:

> (a) The court shall grant the debtor a discharge, unless-
> (4) the debtor knowingly and fraudulently, in or in connection with the case-
> (A) made a false oath or account[.]

11 U.S.C. § 727(a)(4)(A).

As this Court has held previously, a debtor will be denied a discharge based on the making of a false oath if: (1) the debtor made a statement under oath; (2) the statement was false; (3) the statement related materially to the bankruptcy; (4) the debtor knew the statement was false; and (5) the debtor made the statement with fraudulent intent. *UST v. Zimmerman (In re Zimmerman)*, 320 B.R. 800, 807-11 (Bankr. M.D. Pa. 2005).

Bankruptcy schedules are statements made under oath. Fed. R. Bankr. P. 1008 (providing that petitions, lists, schedules, statements and amendments shall be verified or contain an unsworn declaration under 28 U.S.C. § 1746); 28 U.S.C. § 1746 (providing that an unsworn

declaration must be made under penalty of perjury and shall have the same force and effect as an oath). Under 11 U.S.C. § 521, debtors are required to disclose income information on two forms filed with the court. Both forms are submitted subject to an unsworn verification. Schedule I requires debtors to disclose their average or projected income at the time they file their bankruptcy cases. *See* Official Form 6. Official Form 22 A (the "Means Test Form") requires debtors to report current monthly income, which is average monthly income received from all sources during the six calendar months prior to the filing of the bankruptcy petition. *See* 11 U.S.C. § 101(10A)(A). By filing these two forms, Debtor reported that she received no income during the six-month period before she filed her petition and that she did not expect to receive income after she filed her petition on September 23, 2009. By verifying her schedules and statements, Debtor attested that Schedule I and the Means Test Form were complete and accurate. On Schedule I, Debtor specifically indicated that she was unemployed and received no income from any source at the time the petition was filed.

The UST argues that Debtor's conviction for selling cocaine and heroin demonstrates that Debtor was receiving income at the time she filed her petition. Despite evidence that Debtor engaged in transactions where controlled substances were exchanged for cash, the UST has not met its burden of proving that Debtor derived income from these transactions during the relevant pre-petition period. While testimony was developed in Debtor's state court criminal trial regarding cash physically received by Debtor in exchange for drugs, there was a paucity of evidence regarding the amount of cash received and the disposition of those funds. It is unknown whether Debtor retained the funds, spent them, or transferred them to other persons. In order to obtain a conviction, the Commonwealth only had to prove that Debtor delivered controlled

5

substances to another party, not that she earned income from these illegal activities. Accordingly, the Court is unable bridge the gap in the evidence and conclude that Debtor's statements regarding her income on Schedule I or on the Means Test Form were false. Having determined that the UST has failed to meet her burden to establish that Debtor received income, it is unnecessary to examine the remaining elements to determine whether the statement that she received no income constitutes a false oath.

By this holding the Court does not find that Debtor did not earn income from the illicit sale of drugs. Simply stated, the evidence produced at trial by the UST was inadequate to meet her burden of proof. I find support for this conclusion in *Holl v. Hankins (In re Hankins)*, 200 B.R. 289 (Bankr. D. N.H. 1996). In *Hankins*, a creditor alleged that the debtor had failed to report income on his statement of financial affairs. The funds received were derived from tips and from money taken from a cash register while the debtor was employed as a manager at a restaurant owned by his family. The bankruptcy court noted that a "debtor has a duty to disclose nonreported income in his bankruptcy schedules even though that may create a criminal violation with regard to the IRS or create more financial problems for him than he already has." *In re Hankins*, 200 B.R. at 291. Debtor in the within case was under a similar duty to report income received from drug sales. In *Hankins*, from the evidence offered at trial, the bankruptcy court was able to infer that the debtor had obtained approximately $16,000 in unreported income. *Id.* at 290-91. Nevertheless, the court determined that "while there may have been an inaccurate statement with regard to income[,] the inaccuracy cannot be laid to a knowing and fraudulent intent to deceive the creditors in this bankruptcy estate. . . ." *Id.* at 291. In the within case, the

6

evidence presented is insufficient even to find that there was false representation as to income, let alone conclude that Debtor possessed a fraudulent intent. Like the *Hankins* court, I am unable to make the inference that Debtor received income that she knowingly and fraudulently failed to report in her schedules.

## Conclusion

For the preceding reasons, the Complaint seeking the revocation of Debtor's discharge will be denied and judgment will be entered in favor of Debtor and against the UST. An appropriate order will follow.

**By the Court,**

*Mary D. France*
Chief Bankruptcy Judge

Date: July 26, 2011